### HOOKS v. HOOKS.

#### No. 14388.

Circuit Court, Lake County.

April 13, 1959.

George W. Scofield, Inverness, for plaintiff.

H. L. Pringle, Leesburg, for defendant.

T. G. FUTCH, Circuit Judge.

The plaintiff, Etta B. Hooks, filed her complaint in this court seeking divorce from the defendant, George Washington Hooks, Sr., and as additional relief, in the event decree of divorce should be entered, partition of certain real estate in Lake County alleged

to be owned by plaintiff and defendant as an estate by the entirety, by reason of the relation of husband and wife and the title being in the names of the two.

The defendant answered, denying the grounds for divorce alleged by the plaintiff, and further alleging that there was not and never had been a lawful marriage existing between plaintiff and defendant. Supporting the allegations that no such lawful marriage had ever been consummated between the plaintiff and the defendant, the defendant further alleged that at the time he and plaintiff participated in a marriage ceremony for the purpose of being married, the plaintiff was lawfully married to another man whose name was Frank Nelams, from whom she had never been divorced, and who was living at the time of the alleged marriage between the plaintiff and the defendant.

With the answer, the defendant interposed a counterclaim, by which he seeks to have the alleged marriage between him and the plaintiff declared null and void from the beginning because of the alleged former and existing marriage of the plaintiff, further seeking to have all interests of the plaintiff in the real estate cancelled, so as to vest in him alone, the complete title, free and clear of any claim on the part of the plaintiff.

The pleadings of the parties show that they had lived together as husband and wife for more than 19 years at the time of the separation; that plaintiff bore the defendant six children as a result of such cohabitation as husband and wife, five of whom were living at the time the complaint was filed on May 29, 1958, ranging in age at the time the bill was filed from 6 to 21 years.

Thus we have presented by the pleadings, two issues to be determined by the court, i.e., the issue of whether the plaintiff is entitled to a divorce, presented by the complaint and the answer to the complaint, and the issue of the validity of the marriage between the plaintiff and the defendant presented by defendant's counterclaim, as well as his answer in chief to the bill.

We will first consider the question of the validity of the marriage between plaintiff and defendant. In Teel v. Nolen Brown Motors, Inc. (Fla.), 93 So. 2d 874, Justice Thornal, in considering this same question, stated at page 876—"A solution to our problem merely requires the application of certain well established rules heretofore announced by our prior decisions. A presumption exists in favor of the validity of the last marriage. We have held that this is one of the strongest presumptions known to the law. The burden of rebutting it rests upon the party attacking the legality of the last marriage."

The case there under consideration by Justice Thornal was one in which the first wife was attacking the second marriage, seeking to have herself declared the lawful widow of the deceased husband. In that case the first wife and the deceased husband were married in December, 1938 and lived together as husband and wife until about 1948, when the husband deserted and left her, and thereafter, on May 8, 1950, married the second wife. The first wife and the deceased husband had not lived together since their separation in 1948 and it appears from the decision that the second wife had lived with the deceased husband from the time of their marriage until his death, which must have occurred, according to the decision, some three or four years after the second marriage, and after the second wife had borne him two children.

The circumstances revealed by the pleadings and the testimony here would appear to make the presumption in this case much stronger than in the Teel case. To determine this issue, we must examine the facts established by the pleadings (allegations of fact made by one party and direct admissions or failure to deny by the other), and the testimony of witnesses with the exhibits filed in evidence.

Defendant is the party charged with the burden of overcoming the presumption that his marriage to the plaintiff was and is legal and valid. Defendant alleges that the marriage is void because plaintiff at the time of the marriage was lawfully married to another man then living, and from whom she was not divorced. Plaintiff did not allege or claim that she had been released from the former alleged marriage by divorce. She alleged as to that marriage the same cause for invalidity that defendant alleges here, i.e., that the man there involved had a living wife by a former marriage.

Defendant claims that he knew nothing of this alleged former marriage of plaintiff until long after his marriage to her. Little credence can be given this statement of defendant because "Mother Cary's Chickens" were in evidence in the person of two children of plaintiff, living with her. Plaintiff claims she explained the situation thoroughly to defendant before they were married. The known facts lend credence to her story, more than to his. However, whether he knew or did not know the facts is of little importance in aid of his effort to overcome the presumption of validity of his marriage to plaintiff. The question of divorce dissolving plaintiff's first marriage is neither material nor relevant.

Defendant's counsel, however, lay much stress on this question of divorce as to plaintiff's first marriage. In their main brief, they refer to it in the following language—"Certificate of no divorce

(erroneously kept out of evidence by the court on the objection that the same was not material to the issues), showing that neither the plaintiff nor Frank Nelams had obtained a divorce from each other."

The parenthetical statement of defense counsel contained in the above quotation from their brief, indicates an alarming disregard for, or ignorance of, the common amenities to the judge in proceedings of this nature. The certificate of no divorce above referred to by counsel, does not make any positive statement of any kind. It says that a careful search of the records of the Vital Statistics Bureau had been made, but it does not say that the person signing the certificate made this search. It is quite evident from what is said, that the person signing the certificate did not make the search and avoided being responsible for what it contained, because he used this language—"I, Everett H. Williams, Jr., Director of the Bureau of Vital Statistics, hereby certify the above to be true and correct to the best of my knowledge and belief." It is not certified in the manner required by law, since the law requires any such certificate, before it is admissible in evidence, to be made by the "Registrar" of the Bureau of Vital Statistics. Even had the certificate made a direct responsible statement that the records showed no divorce for Frank Nelams and Etta Fluitt Nelams, and had been properly certified, it would not have been admissible in this case because the plaintiff did not assert any divorce and based the validity of her marriage to the defendant solely on the proposition that her marriage to Nelams was void.

Even Don Quixote would not have wasted the energy of his faithful steed to prove by the negative a fact already established in the positive, even though he did mistake windmills for giants, just as defendant's counsel appear to have done in this instance.

Defendant claims that he visited a man Frank Nelams, the alleged first husband of plaintiff, in the Veterans Hospital in Hollywood, Florida, during November, 1958. If so, why wasn't the deposition of Nelams taken? Such deposition was not taken. Defendant had a golden opportunity to establish, if it were true, his assertion that plaintiff was, in fact, the lawful wife of Frank Nelams when he and plaintiff were married.

Defendant introduced in evidence, copy of death certificate of "Frank Nelams, *Jr.*" which shows that he died in January, 1959. This certificate doubtless refers to the man defendant visited in November, 1958. This certificate adds nothing to aid defendant in overcoming the presumption with which he is here faced. In fact,

it tends to confuse, rather than clarify the issue because it opens the possibility of there having been three "Frank Nelams." The certificate attests the death of "Frank Nelams, Jr." and that his father was "Frank Nelams, Sr." Neither "Jr." nor "Sr." is mentioned in the allegations or proofs in connection with the man to whom defendant claims plaintiff was married through all the years she was living with him and having children for him.

There is not one whit of testimony to controvert the allegation made by the plaintiff that the Frank Nelams to whom she thought she was married in the first instance had a lawful living wife at the time he attempted to marry the plaintiff. Neither is there any testimony to controvert her allegation and testimony and that of her mother, that she left Frank Nelams and returned to live with her mother, resuming her maiden name, immediately upon learning of the marital status of Frank Nelams. In fact, the record shows no effort on the part of the defendant to controvert this claim on the part of the plaintiff. Plain, cold fact appears from defendant's pleadings and testimony, that he was satisfied and considered himself lawfully married to the plaintiff—until the institution of this divorce suit by the plaintiff threatened to take one-half of the real estate in question away from his use and dominion. Then, even though he professes to be a preacher of the gospel, he appears to have been perfectly willing to brand his children as bastards, in exchange for this world's lands and goods—to sell their birthright "for a mess of pottage."

This court is persuaded that defendant's charge of a bigamous marriage with the plaintiff is trumped up for no other purpose than to try to deprive her of any interest in the land, and this court has no hesitancy in holding and deciding that the defendant, George Washington Hooks, Sr., has utterly failed to overcome, or even tarnish the presumption in favor of the validity of his marriage with plaintiff.

We come now to the consideration of the question of divorce. To decide this issue, it is not necessary to discuss to any extent, the evidence applicable to the question. Defendant's pleadings, together with the testimony, are conclusive beyond doubt that the plaintiff has established grounds for divorce and is entitled to a decree of this court to that end.

We come now to a consideration of the collateral issue of whether or not the plaintiff is entitled to one-half of the real estate involved. Much evidence was submitted, and much has been said in argument of counsel for both parties concerning payment for this land. I

cannot see where the question of whether she paid much, little, or nothing of the purchase price, has anything to do with her rights in the real estate. Upon the entry of decree of divorce, she will be entitled to an undivided one-half interest in the real estate and to partition thereof.

Decree will be entered in accord with the foregoing findings.